RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0277p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA ex rel. LEATRA
HARPER, STEVEN JANSTO, and LESLIE HARPER,
        *Relators-Appellants*,

        *v.*

MUSKINGUM WATERSHED CONSERVANCY DISTRICT,
        *Defendant-Appellee*.

No. 15-4406

---

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:13-cv-02145—Sara E. Lioi, District Judge.

Decided and Filed: November 21, 2016

Before: GUY, BOGGS, and MOORE, Circuit Judges.

---

### COUNSEL

**ON BRIEF:** Thomas W. Connors, BLACK, MCCUSKEY, SOUERS & ARBAUGH, Canton, Ohio, Warner Mendenhall, Akron, Ohio, for Appellants. Peter D. Welin, O. Judson Scheaf III, MCDONALD HOPKINS LLC, Columbus, Ohio, for Appellee.

        BOGGS, J., delivered the opinion of the court in which GUY, J., joined. MOORE, J. (pp. 14–15), delivered a separate dissenting opinion.

---

### OPINION

---

        BOGGS, Circuit Judge. In 1949, the United States deeded a large parcel of land in Ohio to the Muskingum Watershed Conservancy District ("MWCD"), a state entity responsible for controlling flooding in eastern Ohio. The deed provided that the land would revert to the United

States if MWCD alienated or attempted to alienate it, or if MWCD stopped using the land for recreation, conservation, or reservoir-development purposes. MWCD subsequently sold rights to conduct hydraulic fracturing ("fracking") operations on the land. Three Ohio residents opposed to fracking discovered the deed restrictions and, operating on the theory that MWCD's sale of fracking rights triggered the reversion clause in the deed, filed an action against MWCD under the False Claims Act, alleging that MWCD was knowingly withholding United States property from the federal government. The district court granted MWCD's motion to dismiss. The relators appealed. For the reasons given below, we affirm the judgment of the district court.

I

The False Claims Act ("FCA"), 31 U.S.C. § 3729, imposes civil liability on any person who fraudulently—or, under certain circumstances, knowingly—deprives the United States of property. *Id.* § 3729(a)(1). As the Act's name suggests, liability under the Act often arises for the submission of false claims to the government. *Id.* § 3729(a)(1)(A)–(B); *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). But two of the Act's provisions also penalize the improper retention of government property: First, the "reverse-false-claim" provision of the FCA provides for fines and treble damages against anyone who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G), (a)(2). Second, under the FCA's "conversion" provision, those same penalties also apply to anyone who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property." *Id.* § 3729(a)(1)(D).

In order to promote enforcement of the FCA, Congress created a qui tam provision, under which whistleblowers—called "relators"—may bring civil actions on behalf of the government for alleged FCA violations. *Id.* § 3730(b); *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005). If a relator is successful in recovering money for the government, she may retain up to twenty-five percent of the proceeds, as well as reasonable expenses, attorney's fees, and costs. 31 U.S.C. § 3730(d)(1). However, Congress was aware that the qui tam provision could encourage "opportunistic plaintiffs" to bring "parasitic lawsuits whereby would-be relators

merely feed off a previous disclosure of fraud." *Walburn*, 431 F.3d at 970. In an effort to stop such "opportunistic suits, on the one hand, and encourage citizens to act as whistleblowers, on the other," *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 233 (3d Cir. 1998), Congress placed a number of limitations on qui tam actions under the FCA, among which is the public-disclosure bar, a requirement that courts "shall dismiss an[y] [qui tam] action or claim" under the FCA if:

> substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> > (i)    in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> > (ii)   in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> > (iii)  from the news media,
>
> unless the . . . person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

This qui tam action arises under the FCA's reverse-false-claim and conversion provisions. In 1933, the State of Ohio organized the Muskingum Watershed Conservancy District and empowered it to control flooding in Ohio's Muskingum River Watershed. Sixteen years later, the federal government granted MWCD several large parcels of land in central and southeastern Ohio. The deed to the land provided that if MWCD "shall cease using said lands" for recreation, conservation, and reservoir development, or if MWCD "alienate[s] or attempt[s] to alienate any part or parts thereof, the title to said lands shall revert to and revest in the United States."

Five years ago, MWCD began negotiating several lease agreements to grant private firms the right to develop subsurface oil and gas reserves on the land that it received from the United States in 1949. MWCD issued several press releases and held public hearings about the proposed leases, which local newspapers covered extensively. MWCD also posted the lease documents to its website, and ultimately executed several leases between 2011 and 2014.

Relators Leatra Harper, Leslie Harper, and Steven Jansto, who opposed MWCD's plans to allow fracking in the Muskingum River Watershed, discovered the restrictions in MWCD's deed. Reasoning that MWCD's efforts to lease fracking rights represented an "attempt to alienate" the land that triggered the reverter clause in the deed or, in the alternative, that the land was no longer being used for "recreation, conservation, and reservoir development" as the deed required, the relators concluded that MWCD was improperly in possession of United States property and filed a suit on behalf of the United States under the FCA's reverse-false-claim and conversion provisions.

After considering whether to involve itself in the action, the United States declined to intervene. The relators then amended their complaint, and MWCD moved to dismiss. In addition to filing a motion in opposition, the relators moved the court for leave to amend their complaint for a second time "to add allegations relevant to issues raised by [MWCD] in [its] motion to dismiss." The relators attached a proposed third complaint that they hoped to file if granted leave.

The district court denied the relators' motion for leave to amend their complaint as futile and granted MWCD's motion to dismiss. The district court took judicial notice of local media coverage of the MWCD leases, as well as MWCD's own press releases on the subject, and concluded that the relators' action was barred by the FCA's public-disclosure provision. The district court explained that "[t]here can be no doubt that the pivotal allegations in the [proposed amended complaint] are substantially the same as the factual underpinnings of the news stories and press releases" and, because the relators did not allege facts showing that they were original sources of the information, they could not maintain an FCA claim based on MWCD's leases.

The district court went on to conclude that "[e]ven if relators were not barred from bringing a qui tam [action] by prior public disclosur[e], their claims would not survive MWCD's Rule 12(b)(6) attack." After holding that Federal Rule of Civil Procedure 9(b), which requires complainants to plead fraud with "particularity," applied to the relators' claims, the district court determined that the relators could not maintain a claim under the FCA's reverse-false-claim provision. The court explained that the relators had not shown that MWCD had taken any action to "avoid" an obligation to the United States, or that it had done so "knowingly." "At most," the

district court concluded, the complaint "allege[s] a breach of the [d]eed, and it is well settled that 'a mere breach of contract does not give rise to liability under the [FCA].'" *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 2015 WL 7575937, at *3 (N.D. Ohio Nov. 25, 2015) (quoting *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 824 (7th Cir. 2011)).

Because the relators' conversion claim "rel[ied] on the same allegations that MWCD violated the terms of the [d]eed to suggest that [MWCD] is now in possession of government property," the district court dismissed the relators' complaint in its entirety. The court concluded that because the relators' proposed amended complaint did nothing to address the deficiencies the court had found, "it would be futile to permit any further amendment of the pleadings." This appeal followed.

II

Before addressing the merits of the relators' appeal, this court must first establish the appropriate standard of review. Prior to 2010, the FCA's public-disclosure bar provided that "[n]o court shall have jurisdiction over an action . . . based upon . . . public disclosure." 31 U.S.C. § 3730(e)(4)(A) (2006). This explicit reference to jurisdiction led courts to treat the public-disclosure bar as jurisdictional. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 460 (2007). But in 2010, Congress amended the FCA's public-disclosure provision and removed the jurisdictional language, replacing it with a requirement that a court "shall dismiss [any] action or claim" subject to the bar. 31 U.S.C. § 3730(e)(4)(A). Uncertain of whether the amended public-disclosure bar continued to deprive federal courts of jurisdiction, MWCD moved to dismiss this action both for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Citing conflicting case law from other federal courts, the district court analyzed the motion to dismiss under both provisions.

While this appeal was pending, the Sixth Circuit ruled that in light of Congress's 2010 amendment to the FCA, "[t]he public disclosure bar is no longer jurisdictional" and instead may be pleaded as an affirmative defense. *United States ex rel. Advocates for Basic Legal Equal.,*

*Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 433 (6th Cir. 2016).  For this reason, the standard applicable to Rule 12(b)(6) motions governs here.  Under that standard, a plaintiff's complaint must allege facts that "'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'"  *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)).  However, courts need not accept "conclusory allegations or legal conclusions masquerading as factual allegations."  *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)).  On appeal, this court reviews de novo the district court's decision to grant a defendant's motion to dismiss. *Laborers' Local 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014).  This court may affirm on any grounds supported by the record, even those not relied on by the district court. *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002).

## III

On appeal, the relators challenge the district court's determination that they failed to state claims under the FCA's reverse-false-claim and conversion provisions.  Appellant Br. 23, 34.  In doing so, they also challenge the district court's conclusions that the public-disclosure bar and Rule 9(b)'s heightened pleading requirements apply to their FCA claims.  *Id.* at 9–10, 12, 16, 20. This court need not address the relators' arguments concerning the public-disclosure bar or the applicability of Rule 9(b):  Because the relators have failed to state facts from which MWCD's awareness of the alleged FCA violations may be inferred even under the more liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a), *see Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) (explaining that nothing in Rule 9 gives a plaintiff "license to evade the less rigid—though still operative—strictures of Rule 8"), and because such awareness is a requisite element of the two FCA claims before the court, the relators have failed to state a claim for relief irrespective of whether the public-disclosure bar or Rule 9(b) apply here.

## A

The relators first argue that MWCD violated the reverse-false-claim provision of the FCA.  As mentioned above, this provision imposes civil liability on anyone who "knowingly

conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Nowhere in the relators' complaint or proposed amended complaint do they allege that MWCD concealed an obligation to transmit property to the United States. Accordingly, the relators' complaint can only survive MWCD's motion to dismiss if they have shown that MWCD (1) had "an *obligation* to . . . transmit . . . property" to the United States; (2) "improperly avoid[ed]" this obligation; and (3) did so "knowingly." *Ibid.* (emphasis added). Although there is little established case law, given that Congress only recently amended the reverse-false-claim provision, the term "knowingly" must be interpreted to refer to a defendant's awareness of *both* an obligation to the United States *and* his violation of that obligation. Because the relators have not pleaded facts that show such awareness, the district court properly dismissed their "reverse" false claim.

Before 2009, the reverse-false-claim provision of the FCA imposed civil liability on those who "knowingly mak[e], us[e], or caus[e] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7) (2006). The provision's reference to the "knowin[g]" use of a "false record or statement" made clear that only those defendants who knowingly perpetrated fraud against the government could be held liable. *See United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp, Inc.*, 400 F.3d 428, 443 (6th Cir. 2005). In 2009, Congress passed the Fraud Enforcement and Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), which omitted the requirement that a defendant "mak[e], us[e], or caus[e] to be made or used, a false record or statement" from the relevant part of the reverse-false-claim provision. Under the current version of the FCA, anyone who "knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government" is civilly liable. 31 U.S.C. § 3729(a)(1)(G).

Although none of our sister circuits have applied 31 U.S.C. § 3729(a)(1)(G)'s new scienter requirement, the requirement should be interpreted to apply to both the existence of a relevant obligation and the defendant's own avoidance of that obligation. "In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the

entire action, including the object as set forth in the sentence." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). If, for example, "we say that someone knowingly ate a sandwich with cheese, we normally assume that the person knew both that he was eating a sandwich and that it contained cheese." *Id.* at 651. That same principle would suggest that, to most readers, the phrase "Smith knowingly avoided an obligation to the United States," would mean that Smith knew that he had an obligation to the United States and knew that he was avoiding the obligation.

Though in apparent agreement with this premise, the relators argue that a defendant acts "knowingly" when he has notice of a legal obligation, even if the defendant believes that the obligation does not apply under the circumstances. Appellant Br. 28–29. But the FCA requires plaintiffs to show far more. The Act defines the term "knowingly" as follows:

> (1) [T]he terms "knowing" and "knowingly" —
>     (A) mean that a person, with respect to information—
>
>         (i) has actual knowledge of the information;
>         (ii) acts in deliberate ignorance of the truth or falsity of the information; or
>         (iii) acts in reckless disregard of the truth or falsity of the information . . . .

31 U.S.C. § 3729(b). Accordingly, unless the circumstances of a case show that a defendant knows of, or "acts in deliberate ignorance" or "reckless disregard" of, the fact that he is involved in conduct that violates a legal obligation to the United States, the defendant cannot be held liable under the FCA.

Any other interpretation would make "the punitive treble damages and penalties afforded by civil FCA actions . . . interchangeable with remedies for ordinary breaches" of contract or property-law obligations. *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 684 (5th Cir. 2003). Assume, for example, a party who has notice of a legal obligation to return park land to the government if she stops using the property for "public-recreation purposes." Under the relators' reading of the FCA's scienter requirement, if the party constructs a theme park on the land with the reasonable but ultimately mistaken belief that such use comports with the government's use restriction, she would be liable under the FCA. But the FCA is aimed at stopping fraud against the United States and does not create "a vehicle to police technical

compliance with" federal obligations.  *United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 531 (6th Cir. 2012); *see also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010) (explaining that "[s]trict enforcement of the FCA's scienter requirement" is necessary to "ensure that ordinary breaches of contract are not converted into FCA liability").  For this reason, "[e]stablishing knowledge under" FCA provisions that use knowledge as scienter requires plaintiffs to "prove that the defendant knows . . . that [he] violated a[n] . . . obligation," not simply that he mistakenly interpreted a legal obligation.  *Sci. Applications Int'l Corp.*, 626 F.3d at 1271.

All of this means that the relators' complaint must allege facts that create the inference that MWCD knew that the relevant deed restrictions required it to deliver property to the United States, or that it "act[ed] in deliberate ignorance" or in "reckless disregard" of this fact. 31 U.S.C. § 3729(b)(1)(A); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007).  The relators have failed to satisfy this burden.  In this case, neither the relators' complaint nor their proposed amended complaint includes facts that show how MWCD would have known that the fracking leases violated the deed restrictions or how MWCD "act[ed] in deliberate ignorance" or in "reckless disregard" of that fact.  In the absence of such facts, the relators have failed to show anything more than a possibility that MWCD acted unlawfully.  *Iqbal*, 556 U.S. at 679.  As the Supreme Court has explained, this failure is fatal to the relators' claim:  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief."  *Ibid.* (quoting Fed. R. Civ. P. 8(a)(2)).

The relators' complaint and proposed amended complaint do recount the restrictions in the 1949 deed that MWCD received from the United States, and also recount MCWD's decision to sign leases of subsurface mineral rights on the land it received pursuant to the 1949 deed.  These facts could create the inference that MCWD knew about the deed restrictions when it signed the leases, and such an inference would be consistent with the theoretical possibility that MCWD in fact believed that the restrictions forbade it from executing the oil and gas leases.  But again, Rule 8's "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In short, the relators' first claim can succeed only if the court "make[s] inference upon inferences to provide the" facts missing from their complaint. *Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 WL 728222, at *5 (S.D. Ohio Mar. 1, 2010). Because Rule 8 does not obligate the court to engage in such speculation, *see Iqbal*, 556 U.S. at 678–79, the district court properly granted MWCD's motion to dismiss the relators' first claim.

B

The relators' second claim is that MCWD is liable under the FCA's conversion provision, which imposes civil liability on anyone who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property." 31 U.S.C. § 3729(a)(1)(D). The district court dismissed this claim on the ground that "allegations of breach of contract—without some factual contentions setting forth fraudulent conduct—stop short of establishing a[n] FCA claim." Although the district court's analysis would have been sound if the allegations in this case described conduct occurring in or before 2009, in passing FERA, Congress amended the FCA's conversion provision to eliminate a fraud requirement. *See United States ex rel. Holbrook v. Brink's Co.*, No. 2:13-CV-873, 2015 WL 196424, at *9 (S.D. Ohio Jan. 15, 2015). Nonetheless, the district court arrived at the correct result because the relators' failure to allege facts showing that MWCD knew that it possessed property now belonging to the government means that they cannot maintain their conversion claim against MWCD.

There is little doubt that the plaintiffs' complaints, which do not allege fraud, would not have survived a motion to dismiss if the pre-FERA conversion provision governed this case; that provision imposed liability only against those who possessed United States property and, "intending to defraud the Government . . . , deliver[ed], or cause[d] to be delivered, less property than the amount for which the person receive[d] a certificate or receipt." 31 U.S.C. § 3729(a)(4) (2006). But in addition to removing the "receipt" requirement, *see* S. Rep. No. 111-10, at 13

(2009), FERA also replaced the "inten[t] to defraud" requirement with a knowledge requirement, *see* 31 U.S.C. § 3729(a)(1)(D) (imposing liability on anyone who "knowingly delivers, or causes to be delivered, less than all of" United States property that he or she holds). As with the FCA's amended reverse-false-claim provision, no court aside from the district court in this litigation appears to have considered the FCA's conversion provision as it applies after FERA.

Notwithstanding the dearth of relevant precedent, the text of the amended conversion provision suggests that the relators have failed to state a claim under the post-FERA scienter requirement. As described above, ordinary rules of grammar suggest that the word "knowingly" modifies not only the verbs "delive[r]" or "caus[e]," but also the phrase "less than all of that money or property." *See Flores-Figueroa*, 556 U.S. at 650–51. For a defendant to "know" that he is delivering or causing to be delivered "less than all" of certain property "used, or to be used, by the Government," he must necessarily also know that the property belongs to the government. 31 U.S.C. § 3729(a)(1)(D). In their appellate brief, the relators claim that they have "pled that the subject property is government property," "that [MWCD] has failed to deliver such property to the government," and that MWCD knew that it failed to deliver the property. Appellant Br. 36. But that is not enough: Under the text of the conversion provision, the relators must also show that MWCD either had "actual knowledge" that title to the relevant land had reverted to the United States, or that MWCD acted in "deliberate ignorance" or "reckless disregard" of that fact. 31 U.S.C. § 3729(b)(1)(A).

As described above, aside from the conclusory allegation that MWCD "knowingly caused to be delivered less than all" of the United States property that it possessed, the relators' complaints do not mention whether or how MWCD knew or should have known that it was in violation of the deed restrictions, such it knew or should have known that title to the property reverted to the United States. For this reason, the relators failed to properly plead a conversion claim, and the district court's dismissal of that claim was not in error.

IV

Lastly, the relators claim that even if their complaint is defective, "the district court should have allowed [them] [leave] to amend to cure [any] pleading deficiencies." Appellant Br.

36.  Federal Rule of Civil Procedure 15(a) states that leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Though district courts have discretion to permit or deny amendment after a defendant files an answer to a plaintiff's complaint, *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990), "[t]he thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleadings," *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).  Although this court ordinarily reviews a district court's denial of a motion for leave to amend for abuse of discretion, *Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006), where, as here, the district court denies such leave on the ground that amendment would be futile, this court reviews the district court's decision de novo, *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In this case, the relators amended their complaint once before MWCD filed an answer.  After MWCD filed a motion to dismiss the amended complaint, the relators filed a motion to amend their amended complaint to respond to MWCD's motion.  Because, as discussed above, the relators' proposed amended complaint also fails to satisfy the requirements of Rule 12(b)(6), the district court properly denied the relators' motion as futile.  *See Ibid.*

Although the relators argue that they should have had yet another opportunity to amend their complaint after the district court issued its opinion because they lacked "sufficient notice of pleading deficiencies or adequate opportunity to cure them," the relators are not "entitled to an advisory opinion from the [district court] informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 400 (6th Cir. 2013) (quoting *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008)).  This argument thus does not provide the court with grounds to vacate the district court's order granting MWCD's motion to dismiss.

V

In this action concerning title to land in Ohio, the relators creatively attempt to take advantage of recent legislative amendments that replace a fraudulent-intent requirement in two FCA provisions with a requirement that the defendant acted "knowingly." However, the relators fail to properly state a claim even under the more lenient scienter requirement. In particular, the relators fail to plead facts showing that MWCD knowingly violated a deed restriction applicable to land that it holds. This failure means that the relators cannot show that MWCD violated the FCA's reverse-false-claim and conversion provisions by knowingly withholding the land from the United States. For this reason, we AFFIRM the district court's dismissal of MWCD's claims.

––––––––––––––

**DISSENT**

––––––––––––––

KAREN NELSON MOORE, Circuit Judge, dissenting. I agree with the majority's interpretation of the statutory language of 31 U.S.C. § 3729(a)(1)(G) and (D). I disagree with the majority, however, that the relators' complaint fails to satisfy the pleading standards of Rule 8 of the Federal Rules of Civil Procedure in alleging violations of these statutes.

The relators alleged that the United States deeded land to the Muskingum Watershed Conservancy District ("MWCD") in 1949 and that this deed granted "a determinable fee simple estate, subject to a possibility of reverter interest retained by the United States" if the land was not used for its specified purpose. R. 15-1 (Second Am. Compl. at 2–3) (Page ID #362–63); *see also* R. 8 (First Am. Compl. at 2) (Page ID #102). The relators alleged that MWCD entered into several subleases for the purpose of oil, gas, and mineral-resource extraction on the government-deeded land, that these subleases violated restrictions in the 1949 deed, and that "the United States was entitled to immediate possession of said lands." R. 15-1 (Second Am. Compl. at 4–5) (Page ID #364–65); R. 8 (First Am. Compl. at 3–4) (Page ID #103–04). The complaint further states that "[s]ubsequent to the above-described leases, MWCD failed to return possession of said lands to the United States," and that MWCD "retained income derived from said lands, and failed to deliver it to the United States." R. 15-1 (Second Am. Compl. at 6) (Page ID #366).

The majority insists that the relators have not shown that MWCD acted with the requisite degree of scienter. But determining whether a complaint meets Rule 8's requirements is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). Here, given the relative simplicity of the factual basis underlying the relators' claim, I believe that the complaint sets forth sufficient factual allegations such that we can "draw the reasonable inference," *Iqbal*,

556 U.S. at 678, that MWCD knowingly avoided an obligation to the government and knowingly converted government money or property.  For this reason, I dissent.