**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0315n.06

Case No. 17-4098

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. LEATRA HARPER and STEVEN JANSTO, | ) ) | |
| Relators-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| MUSKINGUM WATERSHED CONSERVANCY DISTRICT, | ) ) ) | |
| Defendant-Appellee. | ) | |

**FILED**
Jun 26, 2018
DEBORAH S. HUNT, Clerk

BEFORE: COOK and DONALD, Circuit Judges; HALE, District Judge.[*]

**HALE, District Judge.** This is the second appeal involving a False Claims Act challenge by relators Leatra Harper and Steven Jansto to oil and gas leases entered into by Muskingum Watershed Conservancy District. In the first, *United States ex rel. Harper v. Muskingum Watershed Conservancy District* (*Harper I*), 842 F.3d 430 (6th Cir. 2016), this court found that the relators failed to state a claim under the FCA's conversion and reverse-false-claim provisions because their complaint did not adequately allege that the District knew it had violated an obligation to the United States. Although the alleged obligation at issue here differs from that in *Harper I*, the complaint is similarly deficient. Moreover, the relators gave no indication that their complaint could be amended to satisfy federal pleading standards. We therefore **AFFIRM** the district court's dismissal of the case with prejudice.

---

[*] The Honorable David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

**I.**

The following facts are set forth in the complaint and accepted as true for purposes of our review. *See United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (citing *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008)). The Muskingum Watershed Conservancy District (MWCD) was created in 1933 for flood-control and water-conservation purposes. The following year, MWCD entered an agreement with the United States to construct dams and reservoirs within the district; that project (the "MWCD Project") was later declared a flood-control project pursuant to the Flood Control Act of 1939. Under the Act, the Secretary of the Army was to pay MWCD $1,500,000 in exchange for title to MWCD Project "lands, easements, rights-of-way, and other property," and the Department of the Army paid that amount, less $100,000 in expenses, in August 1939. In November of that year, MWCD requested that the Governor of Ohio seek the state attorney general's opinion as to MWCD's authority to transfer the property. The Ohio Attorney General concluded that MWCD lacked authority to transfer property interests that were necessary to perform its charter purposes. The Army accepted flowage easements on Project lands in May 1940, but MWCD transferred no other property interests to the United States.

From 2011 to 2014, MWCD entered several leases allowing various companies to extract oil, gas, and other minerals from Project lands via hydraulic fracturing, or "fracking." Beginning in 2012, MWCD also sold water from reservoirs on Project lands. It has received and retained millions of dollars as a result of the leases and water sales.

In *Harper I*, the relators alleged that MWCD was obligated to return certain property deeded to it by the United States in 1949. The deed "provided that if MWCD 'shall cease using said lands' for recreation, conservation, and reservoir development, or if MWCD 'alienate[s] or attempt[s] to alienate any part or parts thereof, the title to said lands shall revert to and revest in the United States.'"

2

842 F.3d at 434 (alterations in original). According to the relators, the fracking leases either "represented an 'attempt to alienate' the land that triggered the reverter clause in the deed" or signaled "that the land was no longer being used for 'recreation, conservation, and reservoir development' as the deed required." *Id.* Thus, the relators argued, "MWCD was improperly in possession of United States property." *Id.* They sued, invoking the reverse-false-claim and conversion provisions of the FCA. *Id.* The United States declined to intervene. *Id.*

The district court concluded that the *Harper I* claims were barred by the FCA's public disclosure provision, which requires dismissal

> if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
> (i)    in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii)   in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii)  from the news media,
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A); *see Harper I*, 842 F.3d at 434. In the alternative, the district court found that the complaint failed to state a claim because it did not allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b). *Harper I*, 842 F.3d at 434. This court affirmed on the ground that the relators had failed to adequately allege the requisite knowledge "even under the more liberal pleading standard set forth in" Rule 8. *Id.* at 436.

While *Harper I* was pending, the relators filed the instant action, alleging that MWCD violated statutory and contractual obligations by failing to transfer property interests to the United States after determining that those interests were no longer necessary to perform its charter purposes. As in *Harper I*, they brought suit under the FCA's reverse-false-claim and conversion provisions. The government again declined to intervene. MWCD moved to dismiss for failure to state a claim, and

the district court granted the motion, concluding that the claims asserted here were barred under the doctrine of claim preclusion because they should have been brought in *Harper I*.[1] The relators appeal that decision.

## II.

As before, we review the dismissal under Rule 12(b)(6) de novo, and we "may affirm on any grounds supported by the record, even those not relied on by the district court." *Harper I*, 842 F.3d at 435 (citations omitted). To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff's complaint must allege facts that 'state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level.'" *Id.* at 435 (quoting *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015)).

## A.

The reverse-false-claim provision of the FCA subjects to liability any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). This court explained in *Harper I* that "the term 'knowingly,'" as used in § 3729(a)(1)(G), "must be interpreted to refer to a defendant's awareness of *both* an obligation to the United States *and* his violation of that obligation." 842 F.3d at 436. There, because "neither the relators' complaint nor their proposed amended complaint include[d] facts that show[ed] how MWCD would have known that the fracking leases violated the deed restrictions or how MWCD 'act[ed] in deliberate ignorance' or in 'reckless disregard' of that fact," the relators "failed to show anything more than a possibility that MWCD acted unlawfully," and the

---

[1] The parties dispute whether the *Harper I* complaint could properly have been amended to add the claims asserted in this action. They also disagree as to whether the relators' claims are barred by the statute of limitations, as was suggested in a footnote to the district court's decision. Because we find that the amended complaint fails to state a viable claim in any event, we need not decide these issues.

complaints thus fell short of federal pleading standards.[2] *Id.* at 438 (last alteration in original) (quoting 31 U.S.C. § 3729(b)(1)(A)). In this case, the relators have again failed to adequately plead awareness by MWCD that the leases violated an obligation to the United States.

The relators' amended complaint alleges that "[a]s shown by MWCD's [1939] board minutes, MWCD was on notice of its statutory and contractual obligations to transfer the MWCD Project lands to the United States"; that there "was no limitation on MWCD's authority to fulfill its obligation to transfer" the property interests covered by the oil and gas leases to the United States because MWCD had determined that those interests "were no longer necessary for the performance of its charter purposes"; and that "[d]espite being on notice of the issues related to its statutory and contractual obligations as shown by MWCD's board minutes, and being legally obligated to address them, MWCD did nothing about its obligations." Viewed in the light most favorable to the relators, these allegations "could create the inference that MWCD knew about the [obligation to transfer] when it signed the leases, and such an inference would be consistent with the theoretical possibility that MWCD in fact believed that the [obligation] forbade it from executing the oil and gas leases." *Harper I*, 842 F.3d at 438. But a complaint that shows no more than "the mere possibility of misconduct" on MWCD's part is insufficient. *Id.* at 438 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Again, "unless the circumstances of a case show that a defendant knows of, or 'acts in deliberate ignorance' or 'reckless disregard' of, the fact that he is involved in conduct that violates a legal obligation to the United States, the defendant cannot be held liable under the FCA." *Id.* at 437 (quoting 31 U.S.C. § 3729(b)). The fact that MWCD was aware of an obligation in 1939 *could* mean that it believed more

---

[2] The FCA defines "knowing" and "knowingly" to "mean that a person, with respect to information— (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

than seventy years later that the oil and gas leases violated that obligation, but as pleaded, the amended complaint fails to "nudge[] [the relators'] claims across the line from conceivable to plausible." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The relators insist that they "have plausibly pled actual knowledge or reckless disregard of the obligation and its avoidance." Specifically, they assert that they "pled facts creating the inference that MWCD knew of the 1939 obligation provisions at the time of the leases"; that Ohio law "supports an inference of the accrual of the obligation at the time of the leases"; and that "other facts pled support the inference that MWCD failed to fulfill and therefore avoided the obligation." This argument misses the point made clear in *Harper I*: it is not enough that a defendant was aware of an obligation and failed to fulfill it; rather, the defendant must also have been aware (or deliberately ignored or recklessly disregarded) that its actions violated the obligation. *See* 842 F.3d at 437-38. A complaint that requires us to "make[] inference upon inferences" to supply missing facts does not satisfy Rule 8's pleading requirements. *Id.* at 438 (quoting *Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 U.S. Dist. LEXIS 17956, 2010 WL 728222, at *5 (S.D. Ohio Mar. 1, 2010)). The relators' amended complaint does not plausibly allege that MWCD knew, at the time it entered the fracking leases, that the leases violated an obligation incurred in 1939. It thus fails to state a plausible claim for relief under the reverse-false-claim provision of the FCA.

**B.**

The relators' claim of conversion likewise fails. The FCA's conversion provision applies to any person who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property." 31 U.S.C. § 3729(a)(1)(D). As explained above—and as in *Harper I*—the complaint here lacks factual

allegations showing that MWCD knew it was in possession of property belonging to the United States. *See* 842 F.3d at 439. The conversion claim was therefore properly dismissed.

**C.**

Appellants also maintain that their complaint should not have been dismissed with prejudice without leave to amend. In support, they rely on this court's statement in *Newberry v. Silverman*, 789 F.3d 636 (6th Cir. 2015), that "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Id.* at 646 (alteration in original) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). In *Newberry*, we concluded that the district court had erred in dismissing the plaintiff's fraud claim with prejudice because there was "a reasonable probability that the complaint could have been saved by an amendment." *Id.* There, however, the plaintiff had submitted a ten-page affidavit in opposition to the motion to dismiss that contained "significantly greater detail regarding [the defendant's] alleged fraud" than did the complaint (which, unlike the complaint in this case, was originally filed in state court). *Id.* at 645; *see id.* at 640. Since the affidavit "strongly suggest[ed] that Newberry could amend his complaint to include allegations going into a similar degree of detail" and meeting federal pleading standards, we found that the district court should have dismissed Newberry's claim "without prejudice and with leave to amend." *Id.* at 645-46.

As this court has explained both before and since *Newberry*, however, a district court does not abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment. *See, e.g.*, *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008). "The problem with the lack of a motion or proposed amendment . . . is that '[w]ithout viewing the proposed amendment, it [is] impossible for the district court to determine whether leave

to amend should have been granted.'" *Islamic Ctr.*, 872 F.3d at 387 n.7 (alterations in original) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003)); *see also Beydoun v. Sessions*, 871 F.3d 459, 470 (6th Cir. 2017) ("[I]mplicit in [Rule 15(a)] is that the district court must be able to determine whether justice so requires, and in order to do this, the court must have before it the substance of the proposed amendment." (second alteration in original) (quoting *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002))).

Here, although the relators sought leave to supplement their briefing on the 12(b)(6) motion to address this court's ruling in *Harper I*, they made no attempt to amend their complaint in accordance with that ruling. Unlike *Harper I*, they did not file a motion for leave to amend in conjunction with their response to MWCD's motion to dismiss. *See* 842 F.3d at 434. Nor have they offered any other hint as to what they could add to their complaint that might satisfy Rule 8's pleading requirements. *Cf. United States ex rel. Roycroft v. GEO Grp., Inc.*, 722 F. App'x 404, 408-09 (6th Cir. 2018) (finding *Newberry* distinguishable where plaintiff "failed to identify what she might plead to save her claim below or on appeal" and rejecting "bare request for another opportunity" to amend as "insufficient when made before a district court and . . . insufficient here"); *Beydoun*, 871 F.3d at 470 (finding no abuse of discretion in denial of oral motion for leave to amend where plaintiff "never informed the district court of what facts he would use to supplement his claim, thus allowing him to withstand a motion to dismiss). Even on appeal, the relators merely assert in the final sentence of their brief that "[t]he above discussion regarding the pleading details along with Relator[s'] disclosure of materials to the government supports a conclusion that 'a more carefully drafted complaint might state a claim.'" Nothing in the relators' briefing suggests that they possess additional facts pertaining to MWCD's knowledge, however. The district court thus did not abuse its discretion in dismissing their complaint without leave to amend. *See Islamic Ctr.*, 872 F.3d at 387.

## III.

For the reasons set forth above, we **AFFIRM** the district court's decision.