NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0202n.06

Case No. 24-5393

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 14, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. VIB PARTNERS; LEANN MARSHALL, | ) ) ) | |
| Relators-Appellants, | ) ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN |
| LHC GROUP, INC., | ) ) ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | O P I N I O N |

Before: MURPHY, DAVIS, and BLOOMEKATZ, Circuit Judges.

DAVIS, Circuit Judge. Relators VIB Partners and Leann Marshall appeal the dismissal of their qui tam lawsuit against Defendant LHC Group, Inc. ("LHC Group"), a home healthcare provider, for alleged violations of the False Claims Act ("FCA"). Relators' complaint alleges that LHC Group submitted false patient data to exaggerate patient needs, thereby inflating Medicare reimbursement rates. The district court dismissed the suit without prejudice, citing the FCA's first-to-file bar. The parties accordingly primarily focused their appellate arguments on whether a prior lawsuit, which alleged the same fraudulent scheme, bars this one. But we need not reach that issue because Relators fail to plead their allegations with the particularity that Rule 9(b) requires. For that reason, their complaint cannot survive dismissal on the pleadings. And this fundamental pleading flaw eliminates any need to consider the first-to-file rule. On these grounds, we affirm.

**I.**

**A. The False Claims Act and Medicare**

The FCA, 31 U.S.C. §§ 3729, *et seq.*, prohibits individuals and entities from knowingly submitting false or fraudulent claims for payment to the federal government. The statute allows private individuals, known as relators, to bring qui tam lawsuits on behalf of the government. 31 U.S.C. § 3730(b). In a qui tam suit, the relator files a complaint under seal and serves the United States with a copy of the complaint and a disclosure of all material evidence. *Id.* § 3730(b)(2). After reviewing these materials, the government may choose to intervene or "notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." *Id.* § 3730(b)(4). Regardless of its choice, the government retains the right to dismiss the action at any time, *id.* § 3730(c)(2)(A), or settle the case, *id.* § 3730(c)(2)(B).

Medicare is a federal health insurance program that provides benefits mainly to people 65 years old and older. 42 U.S.C. § 1395c. Among other functions, Medicare reimburses home health providers, like LHC Group, for their services to Medicare beneficiaries. *See id.* § 1395fff. The reimbursement process requires providers to submit and certify patient data using the Outcome and Assessment Information Set ("OASIS"). *See* 42 C.F.R. §§ 484.55, 424.22. These assessments determine the patient's necessary level of care, which affects the reimbursement rates. *See id.* § 424.22. For example, homebound Medicare beneficiaries receive certain medically necessary services at home. *See* 42 U.S.C. §§ 1395f(a)(2)(C), 1395n(a)(2)(A). But for a provider of such services to qualify for reimbursement, the beneficiary must be genuinely homebound and require the skilled services that the home health provider delivers. *See* 42 C.F.R. §§ 409.41(c), 409.42. Congress prohibits Medicare payments for services that fail to meet medical reasonableness and

necessity standards.  *See* 42 U.S.C. § 1395y(a)(1)(A).  If a provider violates Medicare rules, it risks payment denials.  *Id.*

Because Medicare is a federally funded program, the FCA applies to claims submitted by healthcare providers for Medicare reimbursement.  *See Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011).  Under the FCA, healthcare providers may not knowingly submit false or fraudulent Medicare claims.  And if they do, they face civil liability for violating federal fraud and abuse laws.

### B.  Parties and Allegations

Relators LeAnn Marshall, John Estabrook, and VIB Partners filed this qui tam action under the FCA against LHC Group.  LHC Group provides home health and hospice services, primarily for elderly patients who are mostly Medicare beneficiaries.  Relators allege that LHC Group systematically altered OASIS data to exaggerate patient needs, thus resulting in higher payments from Medicare.  They also claim that LHC Group pressured its employees to meet financial targets by fabricating data to skew compliance with Medicare's eligibility criteria.  For example, Marshall—who was a registered nurse at LHC Group for about six years—alleges supervisors pressured her to inflate OASIS scores to justify higher reimbursements.

Then there is Estabrook, a former data manager at LHC Group.  He says that he identified widespread irregularities in OASIS assessments.  He also alleges that LHC Group made alterations that he claims made patients' conditions appear more medically complex than they were.  Estabrook was also a partner at VIB Partners, a partnership of former LHC Group managers.  VIB Partners avers it reviewed LHC Group's internal documents and billing data.  It alleges that its analysis revealed patterns of fraudulent Medicare claims.

**C. Procedural History**

Relators filed their qui tam complaint in the District of Maryland on August 30, 2021, alleging that LHC Group's fraudulent billing practices violated the FCA. The District of Maryland later transferred Relators' claims to the Eastern District of Tennessee. The government declined to intervene. LHC Group moved to dismiss the complaint, arguing that (1) the first-to-file rule under 31 U.S.C. § 3730(b)(5) and the public-disclosure rule under § 3730(e)(4)(A) precluded Relators' claims; and (2) Relators failed to state a claim because the complaint's allegations flunked both the plausibility requirement of Federal Rule of Civil Procedure 8 and the particularity requirement of Rule 9(b). The district court dismissed the case without prejudice, and Relators timely appealed.

**II.**

The district court dismissed the case based on LHC's argument that Relators' claims were barred by the FCA's first-to-file rule. And so, on appeal, the parties briefed the first-to-file issue at length. But because there is a fundamental flaw with the particularity of the pleadings here, we need not reach that issue or its thornier lead-in question of whether *Marshall I*, a prior case involving the same allegations, remained "pending" for purposes of the first-to-file rule. The complaint fails on other grounds. In its underlying motion to dismiss, LHC Group argued that Relators failed to satisfy Rule 9(b)'s heightened pleading requirement. Relators countered that they deserved a "relaxed" application of Rule 9(b) under this court's precedents. Although the district court did not address the parties' pleading arguments, we "may affirm on any grounds supported by the record, even those not relied on by the district court." *See United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016). We elect

to do so here and review de novo LHC Group's Rule 9(b) challenge. *Chesbrough*, 655 F.3d at 467.

To begin, "a complaint alleging FCA violations must allege the underlying facts with particularity as required by Rule 9(b)." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641 (6th Cir. 2003) (*Bledsoe I*). And Rule 9(b) requires plaintiffs to specify the "who, where and when" of the alleged fraudulent conduct. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) (*Bledsoe II*) (citation omitted). This standard ensures that defendants receive adequate notice to prepare a defense and prevents baseless claims from advancing to discovery. *Id.* at 503 n.11.

LHC Group asserts that Relators failed to meet Rule 9(b)'s heightened pleading requirements. In particular, LHC Group claims that the complaint lacks detailed allegations identifying specific fraudulent claims submitted to Medicare or connecting any such claims to particular false statements. In response, Relators argue their allegations describe a systemic scheme of fraud, including manipulated OASIS data and inflated patient needs assessments, which they contend support a strong inference that LHC Group submitted false claims. This strong inference, they argue, meets Rule 9(b)'s particularity requirements. But this court held in *United States ex rel. Owsley v. Fazzi Associates, Inc.* that relators cannot survive a Rule 9(b) challenge by alleging a systemic scheme alone. 16 F.4th 192, 196 (6th Cir. 2021). *Fazzi* requires relators to identify one or more specific false claims that the defendant submitted to the government. *Id.* Broadly alleging misconduct is not enough. Nor is it enough to allege that "claims requesting illegal payments must have been submitted." *Id.* (citation omitted). "The default rule is that a False Claims Act claimant must identify a 'representative claim that was actually submitted to the government for payment.'" *Id.* (quoting *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,

874 F.3d 905, 915 (6th Cir. 2017)). Alternatively, relators can establish a strong inference of submission by alleging facts based on personal knowledge of billing practices. *Id.* (citing *United States ex rel. Prather v. Brookdale Senior Living Cmtys.*, Inc., 838 F.3d 750, 771 (6th Cir. 2016)).

Here, Relators claim firsthand knowledge of OASIS score manipulations but fail to link these alterations to specific claims LHC Group submitted for Medicare reimbursement. And they offer no details about LHC's actual billing practices to give rise to an inference of submission. Nor do they identify dates, claim amounts, or the individuals responsible for the submissions. Without these details, the complaint does not satisfy Rule 9(b). We have already held that Rule 9(b) demands more than allegations of false information—it requires a direct connection to false claims submitted for payment or details from which such submission can be strongly inferred. *Fazzi*, 16 F.4th at 196. Because Relators fail to establish this causal link, their case weakens further.

Relators argue that LHC Group controls key billing records, so the court should apply a relaxed Rule 9(b) standard. While we have recognized limited flexibility in such cases, relators must still present enough factual content to support their claims. *See Bledsoe II*, 501 F.3d at 504. Even under a relaxed standard, the complaint must provide enough detail to infer a plausible claim. Here, it does not. The examples in paragraphs 237–51 of the complaint still fail to allege that LHC Group submitted any specific false claims. *Id.* at 513. Of all twelve examples Relators cite, only two allege that "Medicare was billed." (Complaint; R. 1, PageID 63–64 ¶¶ 248, 249). Still, Relators omit key details in those two instances. They identify "neither the dates on which [they] reviewed the OASIS forms for these patients, nor the dates of any related claims for payment, nor the amounts of any of those claims." *Fazzi*, 16 F.4th at 197. And even when we suggested "relaxing" Rule 9(b) requirements, we cited a case in which the relator both identified the

documents containing evidence of the false claims and alleged that those documents were exclusively in the defendant's control. *Bledsoe II*, 501 F.3d at 504 n.12 (citing *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) (per curiam)). Relators make no such allegations here. In sum, Relators' failure to allege specific false claims or to connect the alleged scheme to actual Medicare submissions renders their complaint deficient under Rule 9(b).

## III.

Relators also summarily requested, in a single footnote, leave to amend their complaint to fix any potential Rule 9(b) issues, stating, "[i]f the [c]ourt determines that the [complaint] contains pleading deficiencies under Rule 9(b), Relators respectfully request leave to file an amended complaint." (Br. in Opp. to Motion to Dismiss; R. 51, PageID 98 n.30). On appeal, they fault the district court for not permitting such an amendment.

Relators' request fails procedurally. While leave is to be freely given, a single sentence in a footnote does not satisfy the requirements for seeking leave to amend under Rule 15(a). *See Salazar v. Paramount Global*, -- F.4th --, 2025 WL 1000139, at *7 (6th Cir. 2025). This court has explained that "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (citation omitted). Without specifying how the proposed amendments would address the deficiencies, Relators have failed to provide a meaningful basis for the court to evaluate their request. *See id.*; *Salazar*, 2025 WL 1000139, at *7. This procedural shortcoming, coupled with the lack of substantive grounds for amendment, does not warrant remand.

**IV.**

We **AFFIRM.**