RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PETER C. NEWBERRY,

*Plaintiff-Appellant,*

No. 14-3882

*v.*

MARC H. SILVERMAN, D.D.S.;
SILVERMAN DENTAL, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:14-cv-00313—Sandra S. Beckwith, District Judge.

Argued: April 29, 2015

Decided and Filed: May 29, 2015

Before: GILMAN, ROGERS, and SUTTON, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Peter Canavan Newberry, Berry, Kentucky, for Appellant. Michael M. Mahon, REMINGER, CO., L.P.A., Cincinnati, Ohio, for Appellees. **ON BRIEF:** Peter Canavan Newberry, Berry, Kentucky, for Appellant. Michael M. Mahon, Danny M. Newman Jr., REMINGER, CO., L.P.A., Cincinnati, Ohio, for Appellees.

───────────────

## OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge. This case stems from a root canal gone wrong. The parties are an Ohio dentist and a Kentucky patient. Approximately 10 years after Marc H. Silverman, D.D.S. performed a root canal on one of Peter C. Newberry's teeth in the early to

mid-1990s, Newberry returned to Silverman because the tooth was hurting.  Silverman examined the tooth, offered a tentative diagnosis unrelated to the root canal, and sent Newberry on his way.  Several years later, Newberry and Silverman repeated this exercise, with the same outcome.  Finally, in 2012, Newberry sought a second opinion and found out that his original root canal had not been properly completed.  Newberry then sued Silverman in a Kentucky state court, Silverman removed the case to a federal district court in Kentucky, that court ordered a change of venue to a federal district court in Ohio, and the district court in Ohio dismissed the complaint for failure to state a claim.

Newberry now appeals that dismissal.  For the reasons set forth below, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings with respect to Newberry's fraud claim, but **AFFIRM** on all other grounds.

## I.  BACKGROUND

Because Newberry's complaint was dismissed on the pleadings, "the facts as set forth in the complaint are taken as true for the purposes of this appeal."  *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 720 (6th Cir. 2010).  The dental history below is therefore based solely on the allegations in Newberry's complaint.

### A.     Dental history

Newberry, then living in Ohio, began seeing Silverman for dental care in 1986.  No later than the mid-1990s, Silverman performed a root canal on one of Newberry's teeth.

Approximately 10 years later, Newberry came back to Silverman complaining that the tooth on which Silverman had performed the root canal was hurting.  Silverman X-rayed the tooth, after which he opined that Newberry had bitten down too hard, bruised a nerve, or developed cancer.  He recommended that Newberry continue monitoring the situation.

Several years later, Newberry returned to Silverman with the same complaint.  Silverman again assured him that the discomfort had nothing to do with the root canal.  Silverman conveyed the same information to Newberry by telephone after Newberry had moved to Kentucky in 2005.  Finally, in November 2012, Newberry visited an endodontist—a specialist in root canals—who

discovered that the root canal that Silverman had performed in the 1990s was incomplete. A portion of the tooth's root remained, which had caused the area to become abscessed. The endodontist resolved the problem, and Newberry has suffered no further discomfort with regard to the tooth in question.

Within days of discovering that Silverman had not performed a complete root canal, Newberry sent an email from Kentucky to Silverman's office in Ohio requesting his dental records. Silverman's office emailed back and informed Newberry that his records were inaccessible farther back than 2003 because the records were stored digitally, and that Silverman's current software was no longer compatible with records before that date. Newberry and Silverman emailed back and forth about Newberry's records several times over the course of the next month, and Silverman was eventually able to find a few more records. Silverman, however, sent only one X-ray of the tooth on which he had performed the root canal, and that was taken during the original procedure. In December 2012, Newberry asked specifically for all of the X-rays of that tooth, but he was told that they had been discarded at some unspecified point in the past. The only explanation that Silverman offered for discarding the records was to reduce the size of Newberry's file.

**B.      Procedural history**

In November 2013, Newberry filed a lawsuit against Silverman and his incorporated dental practice (hereinafter collectively referred to as Silverman) in a Kentucky state court. Silverman removed the case to the United States District Court for the Eastern District of Kentucky based on the parties' diversity of citizenship. He then moved to dismiss the complaint for lack of personal jurisdiction. After hearing oral arguments on the motion, the district court transferred the case to the United States District Court for the Southern District of Ohio. Once the case arrived in Ohio, Silverman filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The district court in Ohio granted Silverman's motion. Newberry has timely appealed.

## II. ANALYSIS

### A. Standard of review

We review de novo the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Higgason v. Stephens*, 288 F.3d 868, 874 (6th Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, the court need not accept as true allegations that are conclusory or require unwarranted inferences based on the alleged facts. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

### B. Ohio law governs Newberry's complaint

The first question before us is whether Kentucky or Ohio law should govern this case. Newberry argues that Kentucky law is applicable for a number of reasons. First, he contends that Kentucky law should control because he originally filed the lawsuit in Kentucky. But when a case that is in federal court because of diversity jurisdiction is transferred from one forum to another, "the choice of law is dependent on the nature of the transfer." *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980). If a case is transferred for the convenience of the parties pursuant to 28 U.S.C. § 1404(a), then the state law of the transferor court applies. *Id.* On the other hand, if a case is transferred under 28 U.S.C. § 1406(a) because it was originally filed in the wrong venue, then the state law of the transferee district court applies. *Id.* The same goes for a case transferred under 28 U.S.C. § 1631 for want of jurisdiction. 28 U.S.C. § 1631 ("[T]he action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred . . .") We review de novo the district court's choice-of-law determination. *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002).

The district court in Ohio determined that Newberry's case was transferred pursuant to § 1406(a). It based this conclusion on the original court's "grave doubt that [the] defendants [were] subject to personal jurisdiction" in Kentucky. Newberry does not challenge the propriety of the transfer. He points out, however, that the order transferring the case to Ohio held that transfer was appropriate under "several theories," and he argues that "there is no reason why the transfer could not be based at least in part upon the convenience of the parties." He contends that because the "convenience of the parties is as likely a reason for transfer as any other," Ohio's choice-of-law rules should not be applied.

The applicable law, however, is not that flexible. Because "the nature of that transfer is often difficult to ascertain," this court has adopted a "broad construction" of § 1406(a), such that "the application of [§] 1404(a) [is limited] to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper." *Martin*, 623 F.2d at 473-74. If, therefore, the Eastern District of Kentucky did not have personal jurisdiction over Silverman, then the case must have been transferred pursuant to some other statute, even if the transfer also resulted in greater overall convenience for the parties.

### 1. Silverman was not subject to personal jurisdiction in Kentucky

Newberry next argues that the district court erred in concluding that Silverman was not subject to personal jurisdiction in Kentucky. We review de novo the district court's personal-jurisdiction determination. *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 542 (6th Cir. 1993). If Newberry is correct, and the district court in Kentucky could have exercised personal jurisdiction over Silverman, then the transfer to Ohio would have had to be based solely on § 1404(a), in which case Kentucky law would govern.

When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *Kerry Steel Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). "[T]his rule requires the court to determine whether both the state's long-arm statute and the Due Process Clause of the United States Constitution permit the exercise of jurisdiction." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

The Kentucky Supreme Court has held that "the proper analysis of long-arm jurisdiction over a nonresident defendant [under Kentucky's long-arm statute] consists of a two-step process." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, a court must look to see if the cause of action arises from the type of conduct or activity that is enumerated in the statute itself. *Id.* The defendant is not subject to personal jurisdiction in Kentucky unless his alleged conduct is among the categories listed in the statute. *Id.* If, however, the long-arm statute does cover the type of conduct at issue, then the court must assess whether "exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.*

We need not reach the question of federal due process in this case because Silverman's conduct does not fit within any of the categories enumerated in Kentucky's long-arm statute. The statute sets out the following nine categories of conduct that may subject a defendant to personal jurisdiction in the Commonwealth of Kentucky:

1. Transacting any business in this Commonwealth;
2. Contracting to supply services or goods in this Commonwealth;
3. Causing tortious injury by an act or omission in this Commonwealth;
4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;
5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth . . . ;
6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property . . . ;
7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;
8. Committing sexual intercourse in this state which intercourse causes the birth of a child . . . ; or
9. Making a telephone solicitation . . . into the Commonwealth.

Ky. Rev. Stat. Ann. § 454.210.

The only contact that Newberry alleges that Silverman had with Kentucky is making fraudulent representations to Newberry over the telephone and by email while Newberry was in Kentucky. But Newberry does not make any attempt to shoehorn this conduct into one of the nine enumerated categories in his initial brief, his reply brief, or even in his opposition to the original motion to dismiss that Silverman filed in the Eastern District of Kentucky. Instead, he focuses his entire analysis on whether the contact is sufficient to meet the federal due process requirements. But this analysis is simply irrelevant if Silverman is not subject to jurisdiction under Kentucky's long-arm statute.

We presume that Newberry fails to argue that Silverman's conduct fits into one of the enumerated categories because he cannot credibly make such an argument. Of the types of conduct listed, only categories four, five, and nine allow for jurisdiction when the act in question took place outside of Kentucky. Category four requires that the defendant regularly engage in or solicit business in Kentucky, and Newberry does not argue that Silverman does so. In order for category five to apply, Silverman would have had to sell goods outside Kentucky with the knowledge that they would be brought into the state. Again, Newberry does not argue that Silverman engaged in any such sale.

This leaves only category nine: making a telephone solicitation into the Commonwealth. On its face, this looks like a promising basis for jurisdiction because this case does involve Silverman making telephone calls into the Commonwealth. The Kentucky legislature, however, has been very precise in defining what constitutes a "telephone solicitation," and it specifically excludes "[a] telephone call made in response to an express request of a person called" or "[a] telephone call to any person with whom the [caller] has a prior or existing business relationship." Ky. Rev. Stat. Ann. § 367.46951. Newberry's affidavit establishes both that he had a preexisting relationship with Silverman and that Newberry was the one who initiated contact with Silverman.

Silverman's conduct therefore does not fit within any of the categories enumerated in Kentucky's long-arm statute. This means that he was not subject to personal jurisdiction in that state, even if federal due process would otherwise permit jurisdiction. Because Silverman was not subject to personal jurisdiction in Kentucky, the decision of the district court in Kentucky to

transfer the case to Ohio could not have been authorized pursuant to § 1404(a), cutting off Newberry's only path to Kentucky law. *See Martin v. Stokes*, 623 F.2d 469, 473-74 (6th Cir. 1980). Ohio's choice-of-law statute therefore governs Newberry's claims.

### 2. *Ohio's choice-of-law statute requires the application of Ohio law*

Newberry next argues that even if Ohio's choice-of-law statute controls, that statute still requires the court to apply Kentucky law. "Ohio courts apply the principles in the Restatement (Second) of Conflict of Laws, directing courts to apply the law of the state with the most significant contacts to the dispute." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 230 n. 3 (6th Cir. 1997). In making this determination, the court should consider the place of the injury, where the conduct giving rise to the injury took place, the domiciles and places of business of the parties, the place where the relationship between the parties is located, *see Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984), and, in claims of fraud, the places where the plaintiff received and acted in reliance on the allegedly false representations, as well as the place where the defendant made the representations, *see In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 905 F. Supp. 2d 814, 833 (S.D. Ohio 2012) (quoting Restatement (Second) of Conflict of Laws § 148(2) (1971)). The district court concluded that Ohio had the most significant contacts to this case. We review that conclusion de novo. *See Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014).

Ohio clearly has the most significant contacts with this dispute. Both parties agree that Newberry was living in Ohio when Silverman initially performed the root canal. Newberry further acknowledges that his relationship with Silverman began in Ohio, and remained exclusively there for 19 years. His affidavit also makes clear that he was living in Ohio when Silverman first made the allegedly false representations to him at Silverman's office, such that Newberry first relied on the representations in Ohio.

Kentucky has a tangential connection to this case at best: in 2012, Newberry reached out to Silverman from his new residence in Kentucky and engaged in telephonic and internet communications with Silverman from Kentucky for a period of approximately two months. Kentucky's relatively brief, tail-end connection with the case pales in comparison with Ohio's

substantial contacts with the dispute. The district court therefore did not err in finding that Ohio's choice-of-law rules require the application of Ohio law.

**B.      The merits of Newberry's complaint**

We now turn to the merits of the case. Newberry's complaint sets forth five causes of action against Silverman: (1) dental malpractice, (2) negligence, (3) spoliation of evidence, (4) intentional or negligent infliction of emotional distress, and (5) fraud. Silverman argues, and the district court held, that the first, second, fourth, and fifth causes of action are time-barred under Ohio law. Newberry concedes that if Ohio law governs, his first cause of action for dental malpractice is, in fact, time-barred. He argues, however, that the other claims should survive because they stem from the fraud that Silverman allegedly committed rather than from the dental care that Silverman provided.

### 1. Newberry's fraud claim is not subject to the four-year statute of repose for "dental claims"

Under Ohio law, "dental claims" are subject to a four-year statute of repose. Ohio Rev. Code Ann. § 2305.113(C)(1) (providing that a dental claim may not be brought more than four years after the act or omission giving rise to the claim). A "dental claim" is broadly defined as "any claim that is asserted in any civil action against a dentist . . . that arises out of a dental operation or the dental diagnosis, care, or treatment of any person," including "derivative claims for relief that arise from a dental operation or the dental diagnosis, care, or treatment of a person." Ohio Rev. Code Ann. § 2305.113(E)(6). The Ohio Supreme Court has clarified that this includes causes of action that "arise[] out of" or are in any way "ancillary" or "inherently necessary" to dental care. *Rome v. Flower Mem'l Hosp.*, 635 N.E.2d 1239, 1242 (Ohio 1994).

Newberry points out, however, that Ohio courts have not subjected fraud claims that are related to, but independent from, malpractice claims to the same statute of repose. He cites *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709 (Ohio 1987), in support of his argument. The plaintiff in *Gaines* went to the defendant for two purposes: (1) to have her pregnancy terminated, and (2) to have her intrauterine device (IUD) removed. *Id.* at 711. According to her complaint, the clinic told her that both procedures had been successful when, in fact, the doctors were unable to locate her IUD. The Ohio Supreme Court held that "[a] physician's knowing

misrepresentation of a material fact concerning a patient's condition . . . may give rise to a cause of action in fraud independent from an action in medical malpractice." *Id*. at 712-13.

This independent cause of action "is subject not to the medical malpractice statute of limitations contained in R.C. 2305.11, but rather to R.C. 2305.09[,] which provides a four-year limitations period for fraud. The statutory period does not commence to run until the cause of action accrues, which occurs when the fraud and the wrongdoer are discovered." *Id.* at 713 (footnote omitted). By the same logic, fraud claims are not subject to the statute of repose contained in § 2305.113(c). Plaintiffs seeking to state a claim under *Gaines* must clearly allege the defendant's actual knowledge of the misrepresentation at issue in order to enjoy the broader statute of limitations. *Britt v. Gwyn,* No. 89-3654, 1990 WL 51455, at *5 (6th Cir. 1990) (per curiam) (unpublished) (holding that the plaintiff could not sustain a separate and independent fraud claim where there was no evidence that the defendant-lawyer actually knew that his statements regarding a contested settlement agreement were false, rather than simply incorrect).

The fraud claim asserted by Newberry could, in principle, meet these requirements. According to the complaint, Silverman "knew he had not completed the root canal," but provided alternative diagnoses "to hide the fact of [his] negligent performance of the root canal procedure." The affidavit that Newberry submitted in support of his opposition to Silverman's original motion to dismiss states that Silverman also affirmatively told him, repeatedly, that "there was no nerve in [the] tooth" that could be causing Newberry's pain even though, according to the complaint, Silverman was well-aware that he had not completed the root canal. These actions, if proven, would constitute a "knowing misrepresentation of a material fact concerning a patient's condition." *See Gaines*, 514 N.E.2d at 712. Neither the complaint nor Silverman's motion to dismiss offers any indication that this misrepresentation was "motivated by any medical consideration," but rather appears to have been driven by "by motivations unrelated and even antithetical to appellant's physical well-being." *Id.* at 713.

Despite its potential viability, however, Newberry's fraud claim is inadequately pled under Rule 9(b) of the Federal Rules of Civil Procedure. State-law claims of fraud that are litigated in federal court must meet the heightened pleading standard required under the Federal Rules of Civil Procedure. *See, e.g., SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351,

358 (6th Cir. 2014) (applying Rule 9(b) to a claim for fraud based on Michigan law). Rule 9(b) requires a plaintiff bringing a fraud claim to "state with particularity the circumstances constituting fraud or mistake." To satisfy this requirement, a plaintiff must (1) "specify the allegedly fraudulent statements," (2) "identify the speaker," (3) state "when and where the statements were made," and (4) "explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).

Newberry's complaint falls short of meeting these requirements. When asked at oral argument to point to the allegedly fraudulent statements in his complaint, Newberry was unable to do so. The closest that we have been able to come to identifying an allegedly fraudulent statement in the complaint is the following: "After Plaintiff complained of pain in the tooth that Defendant Silverman knew he had not completed the root canal, Defendant Silverman took an X-ray of the tooth and informed Plaintiff he either had bitten down hard and that he had either bruised the tooth or he had developed cancer." This grammatically challenged sentence implies that Silverman misdiagnosed Newberry's toothache, despite having the knowledge that a complete root canal had not been performed. Such a misdiagnosis might be considered fraudulent if Silverman knew that the toothache was, in fact, caused by the incomplete root canal. But that allegation is not made, nor does the complaint explain why Silverman's statement was fraudulent, or clearly identify when and where the statement was made. Newberry's complaint thus fails to meet the particularity requirements of Rule 9(b).

The complaint's deficiencies, however, are capable of being cured by amendment. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the court should "freely give leave [to amend pleadings] when justice so requires." "Although this court reviews denials of leave to amend only for abuse of discretion, it should be emphasized that the case law in this Circuit manifests 'liberality in allowing amendments to a complaint.'" *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986)).

In this case, Newberry filed a 10-page affidavit in support of his opposition to Silverman's original motion to dismiss. That affidavit goes into significantly greater detail regarding Silverman's alleged fraud than the complaint does in its current form. The affidavit,

which was before the district court at the time it dismissed Newberry's case, strongly suggests that Newberry could amend his complaint to include allegations going into a similar degree of detail, which would likely meet the requirements of Rule 9(b). But he was never given the opportunity to do so because of the district court's erroneous conclusion that the fraud claim was a "dental claim" and therefore time-barred under Ohio law regardless of how well it was pled.

The district court should instead have held that Newberry's fraud claim was a separate and independent cause of action under *Gaines* and thus exempt from Ohio's time-bar on dental claims. An analysis of the merits of the fraud claim, however, would have revealed that the complaint failed to meet the pleading requirements of Rule 9(b). The district court should therefore have dismissed the claim, but without prejudice and with leave to amend, because "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In this case, there is a reasonable probability that the complaint could have been saved by an amendment. The district court therefore erred in not allowing Newberry the opportunity to request leave to amend after he received notice that his complaint was inadequately pled. *See id.*

In sum, Newberry's fraud claim is not subject to the same statute of repose as his dental-malpractice claim. The fraud claim is currently inadequately pled under Rule 9(b), but if those pleadings are sufficiently bolstered in an amended complaint, and if Newberry produces evidence to support his allegations in later phases of the litigation, then the claim might have merit. We therefore conclude that the district court erred in dismissing Newberry's fraud claim with prejudice, and we remand the case with instructions to allow Newberry an opportunity to file an amended complaint.

### 2. Newberry's claims of dental malpractice, negligence, and infliction of emotional distress are time-barred

The district court's analysis of the remainder of Newberry's substantive claims is sound because they are time-barred under Ohio law. Notwithstanding Newberry's new theory—presented for the first time at oral argument—that his follow-up visits to Silverman constituted independent medical diagnoses and reset the clock for the statute of repose, he clearly conceded

in his briefs that, under Ohio law, any dental malpractice claim is barred. This is because even his last follow-up visit occurred more than four years before suit was filed. He argues, however, that his claims for negligence and infliction of emotional distress should not be barred because they do not stem from dental care, but rather from the independent fraud claim discussed above. But Newberry cites no authority for the proposition that *Gaines* exempts any claims other than fraud from the broad definition of a "dental claim" that is subject to the four-year statute of repose.

In fact, two of the cases cited in his briefs stand for the proposition that an emotional-distress claim caused by statements made in conjunction with medical care still qualifies as a "medical claim" under Ohio law, even when the claimant is not the patient. *See Roberts v. Luneau-Gordon*, No. 15212, 1995 WL 703898, at *6 (Ohio Ct. App. Nov. 29, 1995) (unpublished) (holding that the parents' emotional distress caused by a doctor's failure to follow protocol with respect to MRIs taken of their child was a medical claim); *Butler v. Jewish Hosps., Inc.*, No. C-940119, 1995 WL 256297, at *1 (Ohio Ct. App. May 3, 1995) (unpublished) (holding that the emotional distress caused by a nurse incorrectly announcing that the plaintiff's husband was dead fell within Ohio's definition of a "medical claim"). The district court thus did not err in concluding that Newberry's negligence and emotional-distress claims were time-barred.

### 3. Because Newberry's complaint against Silverman was not disrupted by the allegedly destroyed dental records, the spoliation claim cannot stand

Finally, the district court correctly determined that Newberry's spoliation claim is flawed. There are a number of problems with the claim, but the most determinative are Newberry's failure to plead facts to support the inference that the alleged destruction of the dental records actually disrupted his case and his failure to plead facts indicating that Silverman intentionally destroyed the documents to prevent their appearance in litigation. A spoliation claim under Ohio law has five elements: (1) pending or probable litigation, (2) the defendant's knowledge of such litigation, (3) the defendant's willful destruction of relevant evidence, (4) actual disruption of a claimant's litigation due to the destruction, and (5) damages flowing from the spoliation. *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038 (Ohio 1993).

Newberry has not identified any aspect of his complaint that he would otherwise have been able to pursue, but cannot, because of the alleged destruction of some of his dental records. Although Newberry's briefs argue that his spoliation claim stems from his fraud claim, the complaint itself frames the entire cause of action around the loss of evidence of Silverman's "negligent performance" of the root canal, as well as "other dental work." The spoliation claim is in no way tied to the fraud claim.

And even if the spoliation claim did stem from the fraud claim, Newberry's argument about his missing records is "based on innuendo, claiming that the records were missing without explanation." *See McLeod v. Mt. Sinai Med. Ctr.*, 852 N.E.2d 1235, 1245 (Ohio Ct. App. 2006) (internal quotation marks omitted) (rejecting a spoliation claim where the plaintiff's argument for willful destruction was based on the absence of records rather than affirmative evidence that the defendant intentionally destroyed them). Newberry's reply brief is full of rhetorical questions as to the location of the missing records and speculations as to why they were not presented. But he has not alleged that Silverman in fact destroyed them to hinder Newberry's claim, and Ohio law does not recognize a spoliation claim based on speculation and guesswork. In sum, the district court did not err in dismissing Newberry's fundamentally flawed spoliation claim.

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings with respect to Newberry's fraud claim, but **AFFIRM** on all other grounds.