RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JEFFREY PARCHMAN and NANCY CARLIN, individually
and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

SLM CORPORATION; NAVIENT CORPORATION;
NAVIENT SOLUTIONS, INC.; SALLIE MAE BANK,

*Defendants-Appellees*.

No. 17-5968

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:15-cv-02819—John Thomas Fowlkes, Jr., District Judge.

Argued:  March 16, 2018

Decided and Filed:  July 20, 2018

Before:  BOGGS, CLAY, and LARSEN, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Benjamin J. Miller, THE HIGGINS FIRM, PLLC, Nashville, Tennessee, for
Appellants.  Lisa M. Simonetti, VEDDER PRICE (CA), LLP, Los Angeles, California, for
Appellees.  **ON BRIEF:**  Benjamin J. Miller, THE HIGGINS FIRM, PLLC, Nashville,
Tennessee, James A. Dunlap Jr., JAMES A. DUNLAP JR. & ASSOCIATES LLC, Atlanta,
Georgia, for Appellants.  Lisa M. Simonetti, VEDDER PRICE (CA), LLP, Los Angeles,
California, Bryan K. Clark, VEDDER PRICE P.C., Chicago, Illinois, Odell Horton, Jr., WYATT
TARRANT & COMBS, Memphis, Tennessee, for Appellees.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiffs Jeffrey Parchman ("Parchman") and Nancy Carlin ("Carlin"), individually and on behalf of all others similarly situated, sued Defendants SLM Corporation ("SLM"), Navient Corporation ("Navient"), Navient Solutions Inc. f/k/a Sallie Mae, Inc. ("NSI"), and Sallie Mae Bank ("SMB") for negligent and knowing/willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs appeal from the judgment entered by the district court granting NSI's motion to sever and to dismiss, and denying Plaintiffs' motion to amend the complaint. For the reasons set forth below, we **AFFIRM in part** and **REVERSE in part** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.

**BACKGROUND**

This case arises out of alleged unauthorized autodialed and prerecorded message calls from Defendants to Plaintiffs. Defendants were in the business of servicing student loans. On December 22, 2015, Parchman, individually and on behalf of all others similarly situated, filed suit against SLM, Navient, and NSI for violating the TCPA. The TCPA prohibits a party from making a call "using any automatic telephone dialing system or an artificial or prerecorded voice," in the absence of an emergency or consent. 47 U.S.C. § 227(b)(1)(A). On March 30, 2016, Parchman amended his complaint to add Carlin as a plaintiff and SMB as a defendant.[1]

Plaintiffs allege that Defendants "negligently, knowingly and/or willfully contact[ed] Plaintiffs on Plaintiffs' cellular telephones without their prior express consent within the meaning of the [TCPA]." (R. 27, Amended Complaint, PageID # 97.) With regard to Parchman, Plaintiffs allege that Defendants repeatedly contacted him, even though he never gave them his cell phone number, never owed any debt to any of the Defendants, and told them to stop calling

---

[1]Before May 1, 2014, NSI was known as Sallie Mae, Inc. ("SMI"). At that time, SLM, a holding company, was the parent corporation of SMI and SMB. In 2014, SMI, SMB, and SLM engaged in transactions that terminated the ownership relationship between SMI and SMB, and SMI and SLM. SMI changed its name to NSI. A new parent company for NSI was created called Navient.

him.  With regard to Carlin, Plaintiffs allege that, though Carlin took out a student loan in 2012, Defendants repeatedly contacted her, even after she demanded in writing that they stop calling her, starting on or about October 21, 2014.  Plaintiffs brought the action on behalf of all other persons similarly situated.  They requested monetary and injunctive relief, attorney's fees and costs, and Rule 23 class certification.

On May 6, 2016, NSI filed a motion to sever and dismiss Carlin's claims.  NSI argued that severing the actions was appropriate because the calls involved different companies and their respective calling practices.  NSI argued that dismissal was appropriate because the district court lacked personal jurisdiction over NSI for Carlin's claims.

On January 13, 2017, Plaintiffs filed a motion to amend the complaint.  After Parchman died on May 25, 2016, Plaintiffs sought to amend their complaint to substitute Parchman's daughter for Parchman and to add his mother as a plaintiff.[2]  On February 3, 2017, Defendants filed a motion to preclude class certification and in opposition to Plaintiffs' motion to amend.  As part of the motion to preclude class certification, Defendants argued that the requisite elements of adequacy of class counsel and adequacy of class representatives were not met.

On July 18, 2017, the district court granted NSI's motion to sever and dismiss for lack of jurisdiction and denied Plaintiffs' motion to amend.  It did not rule on the motion to preclude class certification.  The district court granted the motion to sever Carlin's claims because Carlin was not called by the same company that called Parchman.  The district court granted the motion to dismiss Carlin's claims against NSI because it lacked personal jurisdiction over those claims. The court denied Plaintiffs' motion to amend, reasoning that TCPA claims do not survive a plaintiff's death, TCPA claims may not be assigned, and Parchman's daughter would not be a

---

[2]Plaintiffs' counsel first notified Defendants' counsel of Parchman's death on January 4, 2017.  With regard to the delay in notifying the court of Parchman's death, Plaintiffs' counsel claim they learned that Parchman died when they were trying to reach Parchman to arrange his deposition.  SMB served a notice of deposition for Parchman on December 15, 2016.  Plaintiffs' counsel claim that they "had been regularly giving Mr. Parchman updates without any difficulty by telephone and email, but there was no reason to hear back from him until the request for his deposition was made.  No written discovery was ever sent to him and no settlement offers were ever made to him individually."  (R. 68, Plaintiffs' Status Report, PageID # 306.)  Plaintiffs cite to email updates sent on July 19, 2016, September 25, 2016, September 29, 2016, and November 10, 2016, and an email from Parchman on May 17, 2016.  They say "there was no reason for plaintiff counsel to be concerned when he did not respond to their subsequent communication" and, until December 2016, "plaintiff[s'] counsel's communications were always in the nature of status updates only."  (R. 80, Plaintiffs' Response, PageID # 409.)

proper class representative. Finally, the district court expressed its "deep concerns about Plaintiffs' counsel's performance in this case" based on the delayed reporting of Parchman's death. (R. 91, Order, PageID # 679–78.)

On August 16, 2017, Plaintiffs filed a notice of appeal. On appeal, Plaintiffs ask that this Court reverse the district court's grant of NSI's motion to sever and dismiss and the denial of Plaintiffs' motion to amend.

## DISCUSSION

### I.      NSI's Motion to Sever and Dismiss

#### A.      Motion to Sever

#### Standard of Review

"We review the severance of joined claims for an abuse of discretion." *Payne v. Corr. Corp. of Am.*, 194 F.3d 1313 (6th Cir. 1999) (unpublished table decision) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988)). "The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Johnson v. Advanced Bionics, LLC*, No. 2:08-CV-02376-JPM, 2011 WL 1323883, at *6 (W.D. Tenn. Apr. 4, 2011) (alteration omitted) (quoting *Alvion Properties, Inc. v. Weber*, No. 3:08–0866, 2009 WL 3060419, at *8 (M.D. Tenn. Sept. 23, 2009)).

#### Analysis

Rule 21 of the Federal Rules of Civil Procedure provides that "[t]he court may . . . sever any claim against a party." Courts consider a number of factors when determining whether to sever claims, including:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated;
> (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for separate claims.

*Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 940 (M.D. Tenn. 2013) (citation omitted).

Plaintiffs' only argument on appeal is that the district court's grant of NSI's motion to sever should be reversed because the district court "failed to provide an adequate explanation to support the decision thereby making it impossible for this court to determine if the district court abused its discretion." (Plaintiffs' Br. at 29.)

But the district court did explain itself and adequately justified its action. The district court found that SMB made calls to Parchman but not to Carlin, that NSI made calls to Carlin but not to Parchman, and that NSI had no corporate relationship to SMB when the calls were made to Carlin in late 2014. The district court then concluded:

> The factors to consider in deciding a motion to sever[] weigh in favor of severing Carlin's claims. There are no common questions of fact; the transactions or occurrences at issue regarding the calls are not the same nor did they originate from the same caller or company; the severed party would not be prejudiced; and if the case proceeded to trial, different witnesses and documentary proof would be required to prove these claims.

(R. 91, Opinion, PageID # 688.)

Plaintiffs try to argue that the district court failed to "explain why the transactions or occurrences would not be the same, or why different witnesses and documentary proof would be required." (Plaintiffs' Br. at 30.) But based on the court's finding that Carlin was not called by the same company that called Parchman, it is clear why the transactions or occurrences at issue would not be the same, or why different witnesses and documentary proof would be required. Consequently, the district court was within its discretion to sever Carlin's claims.

**B.      Motion to Dismiss**

**Standard of Review**

"We review *de novo* a district court's dismissal of a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure." *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).

**Analysis**

Plaintiffs argue that the request to dismiss was "contingent on the success of the request to sever" and "because the severance should be reversed[,] so should the dismissal." (Plaintiffs' Br. at 31.) But, as detailed above, the district court did not abuse its discretion in granting the motion to sever.

Plaintiffs then argue that the dismissal should be reversed because NSI waived the defense of lack of personal jurisdiction by "actively and extensively participat[ing]" in the case.[3] (*Id*.) More specifically, Plaintiffs argue that NSI waived the defense by: filing an answer to the amended complaint, participating in written discovery, and "continu[ing] to seek relief from the district court on various matters, including preclusion of class certification." (*Id*. at 31–32.)

A defendant may waive the personal jurisdiction defense through conduct. *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012). "In deciding whether [NSI] waived [its] personal jurisdiction defense, we must determine whether any of [NSI's] appearances and filings in the district court constituted legal submission to the jurisdiction of the court." *Gerber*, 649 F.3d at 519 (citation and internal quotation marks omitted). "[T]he voluntary use of certain district court procedures serve[s] as constructive consent to the personal jurisdiction of the district court . . . ." *Id*. (citation, internal quotation marks, and alterations omitted). "Only those submissions, appearances and filings that give Plaintiff a reasonable expectation that [NSI] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking, result in waiver of a personal jurisdiction defense." *Id*. (citation, internal quotation marks, and alterations omitted). "We consider all of the relevant circumstances." *King*, 694 F.3d at 659 (citing *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (6th Cir. 1999). The personal jurisdiction defense is not waived when a party makes a special appearance in order to contest personal jurisdiction. *Gerber*, 649 F.3d at 520.

---

[3]Plaintiffs do not argue that there was an error in the district court's personal jurisdiction analysis. Because Plaintiffs do not make this argument, we will not consider it on appeal. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (citation and alteration omitted)).

The submissions, appearances, and filings cited by Plaintiffs did not constitute waiver of the personal jurisdiction defense. First, Plaintiffs point to NSI's answer to the amended complaint. But NSI's answer responded only to Parchman's claims. It specifically stated: "[t]hroughout this Answer, NSI responds to the allegations for itself only and for no other defendant, and only as to the allegations made by Parchman." (R 41, Answer, PageID # 169.) NSI did not respond to Carlin's claims in the answer, and did not file a separate answer responding to Carlin's claims. Instead, NSI made a special appearance in order to contest personal jurisdiction by filing a motion to sever and dismiss. This is consistent with NSI's position that the court had personal jurisdiction over Parchman's claims against it, but not Carlin's claims. NSI's answer responding only to Parchman's claims and not Carlin's claims did not constitute "legal submission to the jurisdiction of the court." *Gerber*, 649 F.3d at 520 (citation omitted).

Plaintiffs next argue that NSI participated in written discovery. Plaintiffs cite NSI's Responses to Parchman's First Set of Interrogatories and NSI's Responses to Parchman's First Set of Requests for Production. But again these responses dealt only with Parchman's claims against NSI, and not Carlin's claims against NSI. Plaintiffs also cite NSI's Responses to Carlin's Interrogatories and NSI's Responses to Carlin's Requests for Production. But both of these documents were called "Responses of Specially Appearing Defendant [NSI]" and both included a "Preliminary Statement" that said "NSI states that this Court lacks personal jurisdiction over NSI with respect to the claims made by Carlin. NSI's responses to the Requests shall not be construed as a waiver of any objection to the Court's jurisdiction." (R. 80-8, PageID # 438; R. 80-9, PageID # 447.) In these two responses, NSI did not provide any substantive information and objected to the interrogatories and requests for production on a number of grounds including that "this Court lacks personal jurisdiction over NSI with respect to claims made by Carlin." (R. 80-8, PageID # 438–44; R. 80-9, PageID # 447–454.) These discovery responses did not give Plaintiffs "a reasonable expectation that [NSI] w[ould] defend the suit on the merits" because NSI consistently asserted its personal jurisdiction challenge as a specially appearing defendant and provided no information in response to Carlin's requests. *Gerber*, 649 F.3d at 520.

Finally, Plaintiffs point to a stipulation to amend a scheduling order, a joint motion to continue, and a joint motion to preclude class certification. The stipulated motion for extension of certain scheduling order deadlines was filed by Plaintiffs and joined by counsel for Defendants. The joint motion to continue deadlines and status conference was also filed by Plaintiffs and joined by counsel for Defendants. These two motions do not distinguish the claims brought against NSI by Parchman or by Carlin, but nothing in them indicates that NSI had switched the position that it had maintained throughout the litigation and would begin defending Carlin's claims. Finally, SMB filed a combined motion to preclude class certification that was joined by all Defendants. This motion "dealt with, and arose from, counsel's conduct with respect to J. Parchman, and the impact on his claim." (Defendants' Br. at 41.) The motion barely mentions Carlin at all, and only does so to reference the pending motion to sever and dismiss for lack of personal jurisdiction. Again, this motion represents another instance in which NSI took action on the claims by Parchman, while asserting the personal jurisdiction defense as to the claims by Carlin.

In sum, the submissions, appearances, and filings detailed above did not give Plaintiffs a reasonable expectation that NSI would defend Carlin's claims on the merits and did not require the district court to "go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber*, 649 at 520. NSI did not waive its personal jurisdiction defense.

The district court did not err in granting NSI's motion to sever and dismiss Carlin's claims against NSI. Accordingly, we **AFFIRM** the district court's grant of these motions.

## II.      Plaintiffs' Motion to Amend the Complaint

### Standard of Review

"[T]his Court reviews the denial of a motion to amend under the abuse-of-discretion standard, unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is de novo." *Beydoun v. Sessions*, 871 F.3d 459, 464 (6th Cir. 2017) (citation, internal quotation marks, and alteration omitted).

The district court's denial of leave to add Parchman's mother as a plaintiff with independent claims should be reviewed for abuse of discretion. The district court's denial of leave to substitute Parchman's daughter for Parchman was based on the futility of such an amendment and should be reviewed de novo.

**Analysis**

Plaintiffs sought to amend their complaint to add Parchman's daughter and mother as additional plaintiffs. Plaintiffs argued that the daughter was Parchman's successor in interest and that his mother had her own independent claim based on the same facts alleged in the amended complaint. Apparently, Parchman and his mother shared the cell phone that received the calls from Defendants, and the mother received some of those calls herself. Plaintiffs noted that Parchman's mother could file her own separate lawsuit, but argued the interests of judicial economy would be served by consolidating the actions given the similar issues of law and fact.

We consider first the denial of the motion to amend to add the claims of Parchman's mother, and then the denial of the motion to amend to substitute Parchman's daughter as plaintiff.

**A.      Parchman's Mother**

Leave to amend should be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[I]t should be emphasized that the case law in this Circuit manifests 'liberality in allowing amendments to a complaint.'" *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)).

While "the grant or denial of an opportunity to amend is within the discretion of the District Court," "outright refusal to grant the leave without any justifying reason appearing for

the denial is not an exercise of discretion," but "abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182. This Court has held that the denial of a motion to amend without explanation or justification is an abuse of discretion, *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000), unless the reason for the denial of a motion to amend is "readily apparent, particularly in view of the liberal position of the federal rules on granting amendments." *FDIC v. Bates*, 42 F.3d 369, 373 (6th Cir. 1994) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)).

The district court did not provide a reason for the denial of Plaintiffs' motion to add Parchman's mother. When considering Plaintiffs' motion to amend, the district court referenced the mother initially—"Counsel seeks to add Jeffery Parchman's mother and daughter as successors in interest, due to his untimely death"—but then discussed the reasons Parchman's daughter could not be substituted for Parchman and ultimately denied "Plaintiff's Motions to Amend the Complaint to substitute Jeffrey Parchman's daughter as class representative." (R. 91, Opinion, PageID # 688–92.) The district court did not explicitly deny Plaintiffs' motion to amend the complaint to add the claims of Parchman's mother. Furthermore, as explained in more detail below, the reasoning that supports the denial of the motion to add Parchman's daughter does not apply to the denial of the motion to add Parchman's mother because the mother asserts her own independent claims against Defendants.

The question becomes whether the reason for the denial is readily apparent. The district court mentioned the mother when discussing the court's concerns about counsel's performance and the adequacy of class counsel—a topic entirely separate from the motion to amend. The district court said:

> Also of concern is Counsel's representation that Parchman's mother shared the phone with Parchman and has her own claims, but never joined in this proceeding prior to her son's death. Despite her so-called sharing the phone and having her own claims, Ann Parchman was apparently not involved in this matter. Had she been, she would have notified counsel of her son's death soon after it occurred.

(R. 91, Opinion, PageID # 680.)

Despite Defendants' suggestion that "the Court's concern appears rooted in the significant delay in moving to add J. Parchman's mother as a party and counsel's bad faith in

doing so at this stage," (Defendants' Br. at 28–29), we do not read this language as providing a basis to deny the motion to amend for undue delay and bad faith. The three sentences expressing concern that the mother did not join the proceeding prior to her son's death do not necessarily indicate that the district court thought there was undue delay or bad faith warranting the denial of the motion. This language appears in an entirely different and unrelated section about the performance of counsel. The lack of mention of the mother's claim within the section specifically addressing the motion to amend could mean that the district court simply forgot about the issue. Also, with regard to bad faith, even if Plaintiffs' counsel did have a duty to disclose the "fact of death to a tribunal," it is not clear that counsel acted in bad faith, especially where Plaintiffs' counsel had been sending Parchman email updates and leaving voicemails. (R. 68, Status Report, PageID # 306; R. 80, Response, PageID # 409.) *See supra* footnote 2. And if the district court wanted to deny the motion based on undue delay, "at least some significant showing of prejudice" would be required, and the district court did not discuss any prejudice to Defendants by adding a plaintiff at this stage of the proceedings. *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (citation omitted).

Because we cannot discern from the text of the opinion the reason for the district court's denial of the motion with regard to Parchman's mother, we **REVERSE** the district court's order denying Plaintiffs' motion for leave to amend and **REMAND** for the district court's consideration.

### B.      Parchman's Daughter

As explained above, leave to amend should be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). One reason to deny leave is futility of amendment. *Foman*, 371 U.S. at 182. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun*, 871 F.3d at 469 (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

The district court provided three reasons for denying the substitution of Parchman's daughter. First, the district court said that the TCPA was penal in nature and therefore found that an action under the TCPA did not survive Parchman's death. Second, the district court said that

a TCPA claim "constitutes a right of privacy action," which is a personal right that "may not be assigned to another" or "asserted by a member of the individual's family, even if brought after the death of the individual." (R. 91, Opinion, PageID # 691.) Finally, the district court said that Parchman's daughter would not be a proper representative of the class because she lacked standing due to "her lack of injury in fact," because there was no allegation that "she received a call or was ever the intended recipient of any of the calls from these Defendants." (*Id.* at # 691.) The district court denied the motion to "Amend the Complaint to substitute Jeffrey Parchman's daughter as class representative." (*Id.* at # 692.)

We first consider whether a claim under the TCPA survives a plaintiff's death. "The question of survivability . . . [is] [a] matter[] of federal law." *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 208 (6th Cir. 1977) (citing *Bowles v. Farmers Nat'l Bank of Lebanon, Ky.*, 147 F.2d 425, 430 (6th Cir. 1945)). The TCPA does not contain an expression of Congressional intent regarding survival. "In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law." *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993), *as amended* (Jan. 12, 1994) (citing *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir. 1980)). Under the "federal common-law rule for the survivability of statutory causes of action," "'remedial' claims—*i.e.,* claims to compensate the plaintiff—survive a party's death, whereas 'punitive' claims—*i.e.,* claims to punish the defendant—do not." *Haggard v. Stevens*, 683 F.3d 714, 717 (6th Cir. 2012) (citing *Murphy*, 560 F.2d at 208–09, 211). To determine whether a statute is penal or remedial, courts examine three factors: "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Murphy*, 560 F.2d at 209; *Cook v. Hairston*, 948 F.2d 1288 (6th Cir. 1991) (unpublished table decision).

The survivability of a private action under the TCPA is a matter of first impression for the Courts of Appeals. The only court to squarely address the question is the Western District of New York in *Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768, 771–76 (W.D.N.Y. 2016). That court concluded that because the TCPA was penal in nature, TCPA

claims "abate upon the Plaintiffs death." *Id*. at 776. The district court followed the *Hannabury* court precisely. But because we disagree with the *Hannabury* court's analysis and conclusion, we conduct the three factor analysis anew.

Turning to the first factor, the primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls.[4] The Congressional findings focus on exactly these kinds of individual wrongs. Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §2, 105 Stat. 2394 (1991). For instance, Congress found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy," that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy," and that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." *Id*. The findings are mostly concerned with individual consumers and protecting them from the nuisance and invasion of privacy that result from unwelcome automated telephone calls. In other contexts, courts have also described the purpose of the TCPA as protecting consumers from the harms caused by these unsolicited phone calls. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements."); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 99 (2d Cir. 2017) ("Congress undertook to

---

[4]It would be a mistake to limit our view of the harms associated with a violation of the TCPA to only actual monetary damages, because the harm from these calls is not so limited. *See Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 544 (6th Cir. 2014) (finding that unsolicited faxes under the TCPA "impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce"); *Murphy*, 560 F.2d at 210 (finding the Truth in Lending Act remedial even though consumers would "have difficulty demonstrating the precise dollar amount of their injuries"); *NEC Corp*., 11 F.3d at 137–38 (finding that a *qui tam* relator under the False Claims Act "suffers substantial harm and the *qui tam* provisions of the FCA are intended to remedy that harm," and referencing harms, including "emotional strain due to the discovery of his unwilling involvement in fraudulent activity," potential ramifications to his employment, and having to face the choice of keeping quiet or reporting the fraud); *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 599–600 (Ill. 2013) (stating that Congress identified "loss of paper and ink, annoyance and inconvenience" as harms that the TCPA is meant to redress by prohibiting unsolicited faxes). The *Hannabury* court made this mistake. 174 F. Supp. 3d at 776.

limit the use in commerce of certain methods of communication that impose costs, hardships, and annoyances on unwilling recipients.").

That the harm is widely shared does not mean it is a general public wrong. These are harms felt by identifiable individuals, as individuals. They are not harms felt by the general public, as a community. That the TCPA can also be described as attempting to deter socially undesirable calling practices is not problematic as it was primarily designed to remedy individual wrongs. *See Murphy*, 560 F.2d at 211 ("The Truth in Lending Act ultimately serves the dual purpose of providing a remedy for harm to the monetary interests of individuals while serving to deter socially undesirable lending practices. Congress focused on the individual consumer of credit as the person primarily injured who should be encouraged to prosecute actions and should be allowed to recover directly and adequately for harms done. This is not the sort of statutory scheme properly characterized as penal."); *see also James*, 621 F.2d at 730 (noting that the Truth in Lending Act is designed to "redress both individual wrongs and wrongs to the public, in the sense of redressing a broad social problem," but concluding that the primary purpose of the act is to redress wrongs to the individual consumer); *FTC v. Capital City Mortg. Corp.*, 321 F. Supp. 2d 16, 22 (D.D.C. 2004) ("While the overall enforcement of the [Equal Credit Opportunity Act] may deter discrimination-based lending practices, the Act was clearly intended to protect individual consumers from discriminatory credit practices."). In all, we think that the purpose of the TCPA was to redress individual wrongs felt by individual consumers. Consequently, this first factor suggests that the TCPA is remedial.

As to the second factor, recovery under the statute runs to the harmed individual and not the public, suggesting TCPA claims are remedial.

As to the third factor, the TCPA provides for the recovery of "actual monetary loss from . . . a violation, or . . . $500 in damages for each such violation, whichever is greater." 47 U.S.C. §§ 227(b)(3)(B), (c)(5)(B). In addition, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount under subparagraph (B)" if the court finds a willful or knowing violation of the TCPA. *Id.* §§ 227(b)(3), (c)(5). We cannot say that $500 is wholly disproportionate to the harm suffered as a result of receiving these irritating and invasive calls, especially where the harm is hard to

quantify and may vary significantly from person to person. However, the treble damages provision is more likely disproportionate because it gives the court discretion to increase damages that, at $500 per call, are already greater than actual damages in most cases. This factor, then, leans at least in part toward finding that TCPA claims are penal.

But the TCPA should not be found to be penal merely because one remedy authorized by the statute may be disproportionate to the harm suffered. "[T]he Supreme Court, this court and the courts of numerous other circuits have held a number of statutory schemes authorizing multiple recoveries and minimum recoveries greater than actual damages to be remedial." *Murphy*, 560 F.2d at 210. *Murphy* itself found the Truth in Lending Act was "not made penal by the fact that" it allowed actual damages plus "twice the finance charge." *Id*. at 210. The RICO statute has also been found to be a remedial statute even though it provides that an injured person "shall recover threefold the damages he sustain[ed]." 18 U.S.C. § 1964(c); *see Malvino v. Delluniversita*, 840 F.3d 223, 230 (5th Cir. 2016); *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991). Courts have also found the antitrust statute, which provides for damages identical to those allowed by the RICO statute, to be remedial. 15 U.S.C. § 15(a); *see, e.g.*, *Hicks v. Bekins Moving Storage Co.*, 87 F.2d 583, 585 (9th Cir. 1937).

The TCPA differs from these statutes in three ways, which point in competing directions in determining whether the TCPA is penal or remedial. First, the multiple recovery provision of the TCPA is triggered only when the defendant acts willfully or knowingly. Second, the TCPA permits the court to treble statutory damages of $500 per call, while the other provisions allow the multiple recovery of actual damages or actual finance charges. These differences suggest that the TCPA may be comparatively more penal. But, importantly, the TCPA gives the court discretion to decide in each case whether and how much to increase damages, unlike the provisions in the other statutes which automatically provide multiple recovery. This allows the court to evaluate the facts of a particular case and, perhaps, the harm caused to the plaintiff by the defendant's violations in determining the appropriate level of damages. This difference suggests that the TCPA is comparatively more remedial.

In all, then, we think that claims under the TCPA are best characterized as remedial. "The fact that the statute allows for accumulated recovery does not convert an otherwise

remedial statutory scheme into a penal one." *Murphy*, 560 F.2d at 210 (citing *Huntington v. Attrill*, 146 U.S. 657, 667–68 (1892)). As a result, claims under the TCPA do survive a plaintiff's death. Accordingly, we **REVERSE** the district court's holding regarding the survivability of Parchman's TCPA claims.

The district court offered two reasons that it believed supported its decision to deny the motion to amend.[5] First, the district court incorrectly looked to Tennessee privacy and assignability law to support its decision that a TCPA claim does not survive a plaintiff's death. The district court noted that a TCPA claim is a privacy violation. It cited a Sixth Circuit case which "determined that the 31 prerecorded telemarketing calls in violation of the TCPA were also violations of his privacy under Ohio law." (R. 91, Opinion, PageID # 691 (citing *Charvat v. NMP, LCC*, 656 F.3d 440, 454 (6th Cir. 2011).) It then said, "[s]imilar to Ohio, Tennessee law also holds a party liable for unreasonable intrusion and the resulting harm therefrom." (*Id.* (citing *West*, 53 S.W.3d at 643).) It then said that a violation of the right to be let alone is an invasion of privacy action in Tennessee, which is a personal right that may not be assigned to another or asserted by a member of the individual's family, even after death. But that an invasion of privacy action is a personal right that may not be assigned in Tennessee says absolutely nothing about the TCPA and whether that federal claim survives death or can be assigned.[6] The district court provided no reason why this Court should look to the Tennessee law of assignability in order to determine whether a federal claim under the TCPA survives the plaintiff's death. The cases cited by the district court do not stand for the proposition that a federal TCPA claim should be subject to the state law of invasion of privacy actions or of assignability. The TCPA is a federal claim and federal law "specifies the substantive rules of decision." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 387 (2012). The question of survival

---

[5]The district court stated its holding succinctly in its conclusion: "After a complete review of the record, . . . the Court finds that the TCPA action does not survive the death of the named Plaintiff Jeff[re]y Parchman, and therefore Plaintiff's Motion to Amend the Complaint . . . should be Denied." (R. 91, Order, Page ID # 692.)

[6]The district court was not precise in distinguishing between survivability and assignability, as evidenced by the fact that it said that "the holding in *Hannabury*" was "that once the named party to a TCPA [suit] dies, the claims are not assignable." (R. 91 at 23, PageID 691.)

of a federal claim is a matter of federal law. *Murphy*, 560 F.2d at 208. Tennessee law is irrelevant and has no bearing on this Court's interpretation of a TCPA claim.

Finally, the district court stated that Parchman's daughter would not be a proper representative of the class because she did not suffer any injury since she was never a recipient of the calls.[7] But the question of whether Parchman's daughter would be an adequate class representative under Rule 23 is different than the question of whether the complaint can be amended to substitute her. And to the extent the district court's conclusion was based on a finding that the daughter lacked standing because she had not suffered an injury, we think that resulted from and is inextricably intertwined with its earlier conclusion that Parchman's TCPA claim did not survive Parchman's death.[8] But, as already discussed, a TCPA claim does survive death. Therefore, the district court's statement was not pertinent to whether the daughter could be substituted for Parchman on his individual, rather than class, claims.

Consequently, we **REMAND** for the district court to reconsider the motion to amend the complaint to substitute Parchman's daughter for Parchman. We leave it to the district court's determination on remand whether it is necessary to address the issue of who has the survivor's rights in this case.

## CONCLUSION

Based on the foregoing, we **AFFIRM in part** and **REVERSE in part** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.

---

[7]As an aside, it seems strange that the district court considered this argument. The argument was made as part of Defendants' motion to preclude class certification under FRCP Rule 23. But the district court did not rule on this motion in its opinion. Also, Plaintiffs objected to that motion on the ground that it was premature because the daughter was not yet even a party to the action. Because of their objection, the Plaintiffs did not otherwise brief or argue that the daughter would be an adequate class representative. The district court, then, concluded that the daughter would not be an adequate representative without the benefit of full briefing.

[8]Indeed, had the district court found that a TCPA claim did survive death and that the daughter could step into her father's shoes, it would have been strange for it to then have concluded that she did not have standing, even though her father did. As the substituted party, the daughter would not be asserting her own claim or seeking vindication of her own injury; instead, she would be asserting her father's claim on his behalf.